IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 14-632 |
| GEORGE TRIMIS | : |
| | : |

**DEFENDANT'S MOTION TO SEAL THE RECORD**

On behalf of the above-named Defendant, George Trimis (hereinafter, "Mr. Trimis") please accept this correspondence *in lieu* of a more formal Motion or Petition to seal the criminal record in the above-captioned action.

Mr. Trimis pleaded guilty to bank fraud and conspiracy to engage in money laundering in 2017, and was sentenced to a 24-month prison sentence and five years of supervised release. As of today's date, Mr. Trimis has successfully completed both his prison sentence and supervised release period without incident. Trimis was also ordered to pay $7,423,667 in restitution (A true copy of Mr. Trimis's Judgment of Conviction is attached hereto as "Exhibit A"). However, due to his financial struggles, to which his public criminal record plays a major role, he is far from being in a position to pay the restitution amount ordered upon him, as he is unable to find meaningful work.

Common law presumes a right of public access to judicial records. *Anderson v. Cryovac, Inc.* 805 F.2d 1, 13 (1st Cir. 1986). However, this right is not absolute. *Littlejohn v. BIC Corporation*, 851 F.2d 678 (3rd Cir. 1988). The Third Circuit has recognized that there are certain areas where a record may be sealed. *See, e.g., Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir. 1986). In order for the Court to grant a motion to seal a record, it must be presented with a countervailing interest to be protected. *See Miller v. Indiana Hospital*, 16 F.3d 551 (3d Cir. 1994).

In this case, Mr. Trimis presents the Court with a valid countervailing interest. Mr. Trimis is the head of his real estate development company, Dysart Ventures, Inc, where he negotiates and consults with banks and other institutions for real estate development contracts both in the U.S. and abroad. Because his criminal record is open and accessible to the general public, Mr. Trimis has been completely unable to make a living, as all potential clients and contractors immediately cease all contact or prospective business dealings with him once they become aware of his past convictions.

For example, in 2022, pursuant to his role in exploring financing opportunities for a client, Mr. Trimis was in discussions with representatives from the German Banking Market. But these discussions, like all others, came to a screeching halt when the representatives discovered Mr. Trimis's record. In an email to Mr. Trimis, they explained that he had just learned of Mr. Trimis's prior convictions, and based on that information, "the intended way into the German banking market is closed and based on this fact [we] do not see any chance to facilitate any fruitful contract to addresses we had in mind" (A true copy of this correspondence is attached hereto as "Exhibit B.")

Unfortunately for Mr. Trimis, this is a continuous problem that occurs every time he attempts to contract for new business, and he has not been able to enter into any new contracts or business dealings. This is evidenced by his financial documents. Mr. Trimis's personal TD Bank account reflected a balance of $-26.23 at the end of 2022. By January of 2023, it improved to only $27.31. As of June 2023, his

balance was a mere $106.34 (See Mr. Trimis's TD Bank Records, attached hereto as "Exhibit C."). Currently, Mr. Trimis pays $25 per month towards his $7,423,667 restitution order. Obviously, the ability to work and make a living would allow for Mr. Trimis to more effectively pay his restitution.

Mr. Trimis's struggles with his record impeding his ability to make a living is not uncommon. In fact, it so prevalent that in 2023, Congress introduced a bill to provide a pathway for the clearance of federal nonviolent criminal records to offer defendants with such records, like Mr. Trimis, a better opportunity to gain employment.[1] The Clean Slate Act is a bipartisan bill that would, for the first time, initiate a federal process that allows defendants with non-violent criminal records to automate sealing for eligible, low-level records for those that have completed their sentence and remain crime-free for a certain period of time. Congress's bipartisan initiative reflects a change in the national attitude concerning record-sealing, due in part to the way that criminal records have become more and more accessible because of the internet. In the past, access to criminal records was not as easy as simply googling someone's name. But now, with the click of a button and within mere seconds, anyone can access a criminal record. This has resulted in millions of crime-free, rehabilitated, and talented potential members of the U.S. workforce being shut out of careers and positions they are more than qualified for, simply because of criminal records that could be years or even decades old.

According to the Prison Policy Initiative, of the over 50,000 people released from federal prisons in 2010, a staggering 33% found no employment at all over four years post-release.[2] Akua Amaning, the director of Criminal Justice Reform for the Center for American Progress, wrote in an article for The Hill that roughly one in three Americans with arrest or conviction records are impeded from employment, housing, and schooling.[3] These staggering numbers have led to a national conversation regarding how formerly incarcerated individuals who remain crime-free can secure employment in the modern digital world. Since 2018, twelve states, including New Jersey, New York, and Pennsylvania, have passed clean slate legislation that allows for automatic state record-clearing once a person remains crime-free for a certain amount of time.[4]

When evaluating a motion to seal a court record, the court "carefully balances the competing interests that are at stake in a particular case. *Siedle v. Putnam Investments, Inc.* 147, F.3d 10 (1st Cir. 1998). While, as stated above, there is no question that the public has an interest in public court records, case law that establishes such interest is dated, and does not account for the large-scale increase in accessibility of criminal records. This increase has had a devastating effect on the ability of individuals with public federal convictions to obtain meaningful employment. Unlike individuals with public state crime records, who could file for expungement or possibly reside in a State with clean slate laws that have already passed, individuals with Federal convictions like Mr. Trimis are left up the creek without a paddle. Therefore, with no other available remedies such as expungement, the Court, in the interest of justice, should use its power to seal the record in this matter to allow Mr. Trimis the opportunity to not only work and become financially stable, but also to pay restitution.

## CONCLUSION

---

[1] https://www.cleanslateinitiative.org/updates/congress-clean-slate-2023
[2] https://www.prisonpolicy.org/blog/2022/02/08/employment/#:~:text=How%20many%20formerly%20incarcerated%20people,of%20Justice%20Statistics%20(BJS).
[3] https://thehill.com/opinion/criminal-justice/3977880-the-time-for-a-federal-clean-slate-measure-is-long-overdue/
[4] https://www.shrm.org/topics-tools/employment-law-compliance/clean-slate-laws-are-spreading

For the foregoing reasons, Defendant George Trimis respectfully respects that the Court grant the within petition to seal his criminal record.

Respectfully submitted,

ANTHONY POPE LAW FIRM, P.C.

_____
ANTHONY POPE, ESQ.

DATED: May 8, 2024.