# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :     CRIMINAL NO. 14-632 |
| GEORGE TRIMIS | : |

## **ORDER**

And now, this _____ day of _____, 2024, it is hereby

ORDERED

that the defendant's motion to seal records is denied for the reasons stated in the government's response.

BY THE COURT:

_____
HONORABLE KAREN SPENCER MARSTON
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :   CRIMINAL NO. 14-632 |
| GEORGE TRIMIS | : |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SEAL RECORDS

Defendant George Trimis filed a motion to seal the record of the captioned case, based on his contention that his criminal conviction has made it difficult for him to make a living through the operation of his real estate development company Dysart Ventures. As explained below, however, the Court does not have jurisdiction to order criminal records to be sealed or expunged[1] pursuant to either its inherent equitable power or the All Writs Act in a case where the underlying conviction is not at issue. Also, even if the Court did have jurisdiction to grant the defendant's motion, the defendant's lack of ability to pursue the career of his choice would not be sufficient to outweigh the public interest in access to judicial records under the First Amendment. For these reasons, the government respectfully requests that his motion be denied.

---

[1] The defendant has asked that the Court seal the records of his conviction. The Third Circuit has defined expungement as destroying or sealing records: "in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself." *United States v. Rowlands*, 451 F.3d 173, 176 (3d Cir. 2006) (citing *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004); *see also Peters v. United States*, 2013 WL 3280880, at *1 n.1 (E.D.N.Y. June 27, 2013) ("There is no practical difference between a request to seal and a request to expunge; courts analyze both under the same standard.").

I.      <u>Background of the Case</u>

The defendant pled guilty in February 2016 to one count of bank fraud and one count of money laundering conspiracy. These charges were the result of a scheme in which the defendant's company Dysart Ventures (the same company that he apparently is operating now) obtained a bank loan for $12.75 million for the purpose of purchasing and remodeling a high-rise building in downtown Camden, New Jersey. The defendant obtained the loan by pretending that his then girlfriend was the actual CEO of Dysart, and that she was a wealthy Ivy League graduate who would guarantee the loan, while he would run the day-to-day operations of the building renovation. In the course of obtaining the loan, the defendant provided numerous fraudulent documents and made multiple false statements, including that: (i) the business had sales of $18 million, when the revenue reported on the company's actual tax returns was $3.3 million; (ii) the girlfriend's net worth was $41 million when she was unemployed and had minimal assets; (iii) the girlfriend's brokerage account had $10.8 million when it had only $77, and that her bank account had $9.3 million when it had less than $1,000; and (iv) the businesses had multiple leases from tenants, when in fact the only tenants in the 12-story building were an ATM machine and three cellular power towers on the roof.

In addition to the false claims and documents submitted during the loan application process, a substantial portion of the loan proceeds that were supposed to be used for renovation were instead used by Trimis to purchase a $940,000 New York property and to buy $1.8 million in stocks. At maturity, $10.7 million of the loan was unpaid. The bank was only able to sell the building for $2.2 million.

The defendant received a below guideline sentence of 24 months, to be followed by 5 years of supervised release. Restitution of $7,423,667 was also ordered. According to defense

counsel, the defendant has completed both his prison sentence and his term of supervised release without incident but has been unable to make any meaningful restitution payments due to his inability to obtain work through his business, as potential clients and banks will not deal with him when they learn of his past conviction.

II.     Jurisdiction

The defendant has pointed out that a bill was introduced in Congress that would allow for the expungement of records for non-violent offenders who remained crime free for a period of time. As of now, however, that legislation has not been passed, and this Court does not have jurisdiction to seal the court records, nor is it able to grant relief pursuant to the All Writs Act.

In a case involving a former mayor of a New Jersey municipality who was convicted at a jury trial in a corruption case, both the district court and the Third Circuit rejected the request of the defendant for expungement. *United States v. Rowlands*, 451 F.3d 173 (3d Cir. 2006). The defendant in that case was initially sentenced by the district court to eight years in prison. Ten months later, after the defendant cooperated in an investigation, the prosecution sought a sentence reduction, and the court reduced the defendant's sentence to time served.

In the seven years after his release, that defendant maintained employment as an automobile sales and sales manager. He then applied for, but was denied, reinstatement of his teaching license due to his conviction. The state licensing board rejected his application even though two of the government attorneys who prosecuted his case wrote letters urging the board to reinstate his teaching certificate.

That defendant then moved the district court to expunge his conviction, arguing that the court had jurisdiction based on its inherent equitable authority, as well as the All Writs Act, 28 U.S.C. § 1651. The district court rejected that defendant's claims, finding that the court did not

3

have jurisdiction. The Third Circuit rejected the defendant's request, and affirmed the district court's decision that it did not have jurisdiction. Id. at 174–79.

> In reaching this conclusion, the court first commented on what expungement involved:
>
> A defendant who moves to expunge his or her conviction does not seek to vacate or set aside the conviction. Rather, s/he seeks "[t]he judicial editing of history." *Rogers v. Slaughter,* 469 F.2d 1084, 1085 (5th Cir. 1972) (per curiam). Although different states may define "expungement" differently, "in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself." *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004).

*Id.* at 176. The *Rowlands* court then rejected the defendant's reliance on two district court cases from other circuits in which relief was granted based on the defendant's difficulty finding employment, holding that:

> our precedent clearly establishes that we have jurisdiction over petitions for expungement only when the validity of the underlying criminal proceeding is challenged. Because Rowlands has not attacked the validity of the underlying conviction, we reject his contention that we have inherent jurisdiction over his petition for expungement.

*Id.* at 178.

The *Rowlands* court also held that the All Writs Act did not provide jurisdiction in cases where there was no challenge to the validity of the conviction itself, quoting a Tenth Circuit's decision holding that a defendant who was seeking expungement of a criminal record in order to have improved job opportunities could not rely on the All Writs Act to establish jurisdiction: "While we agree that the All Writs Act plays a part in enabling the court to issue the writs . . . necessary to accomplish an actual expungement, we believe that the authority to consider the issue in the first place is not contained in that Act." *Id.* at 179 (citing *United States v. Pinto*, 1 F.3d 1069, 170 n.1 (10th Cir. 1993)).

Two years later the Third Circuit again found that the courts do not have jurisdiction to

4

expunge criminal records in situations where the existence of that record is alleged to have impeded a defendant's employment opportunities. Citing *Rowlands*, the court found that "neither this Court nor the District Court has jurisdiction to seal or expunge a conviction where there is no challenge to the validity of the conviction or arrest. We do not have jurisdiction to consider an expungement on the basis that a defendant is having difficulty in finding or retaining employment." *United States v. Boniella*, 297 F. App'x 161 (3d Cir. 2008) (non-precedential) (citations omitted).

Other courts of appeal have also concluded that there is no jurisdiction to consider claims to expunge convictions in cases where the challenge is based on the impact of convictions on employment opportunities. *See, e.g.*, *United States v. Wahi*, 850 F.3d 296, 303 (7th Cir. 2017) (remanding to district court, which had denied a defendant seeking expungement of his criminal conviction due to it impeding his employment opportunities, based on balancing the adverse impact of the conviction against the need for judicial records to be accessible to the public, and directed the district court to instead deny expungement based on lack of jurisdiction)[2]; *Doe v. United States*, 833 F.3d 192, 194, 199 (2d Cir. 2016) (reversing a district court's use of ancillary jurisdiction over a defendant's motion to expunge her arrest and conviction records based on her

---

[2] The Seventh Circuit in *Wahi* overturned prior precedent set out in *United States v. Flowers*, 389 F.3d 737 (7th Cir. 2004), in which it had employed a test that balanced the right of open proceedings against the significant adverse impact on a defendant, holding that the courts did not have ancillary jurisdiction to expunge convictions. The court explained that this action was based on the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), which held that "ancillary jurisdiction exists for two limited purposes: (1) to permit claims that are factually interdependent to be resolved in a single proceeding;" and (2) to enable the court to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380. The Seventh Circuit also noted that five other circuit courts, including the Third Circuit, had found that the courts did not have ancillary jurisdiction to expunge convictions. *Wahi*, 850 F.3d at 298, 303.

claim that her conviction had kept her from obtaining or maintaining a job); *United States v. Mettetal*, 714 F. App'x 230, 231, 235 (4th Cir. 2017) (not precedential) (holding that court did not have jurisdiction to expunge long vacated convictions due to "professional and personal consequences"); *United States v. Lucido*, 612 F.3d 871, 875 (6th Cir. 2010) ("federal courts lack ancillary jurisdiction to consider expungement motions directed to the executive branch"); *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007) (finding court did not have ancillary jurisdiction to expunge an acquitted defendant's conviction based on the allegation that the defendant's arrest and trial impeded him professionally); *United States v. Meyer*, 439 F.3d 855, 860-62 (8th Cir. 2006) (court did not have jurisdiction to expunge record of defendant's conviction based on the fact that regulations which restricted his employer's ability to employ individuals who had been convicted of certain crimes); *United States v. Sumner*, 226 F.3d 1005, 1008, 1010, 1015 (9th Cir. 2000) (holding that where a convicted defendant alleged that "the record of his arrest and conviction will preclude him from obtaining the requisite teaching credentials," that "a district court does not have ancillary jurisdiction in a criminal case to expunge an arrest or conviction record where the sole basis alleged by the defendant is that he or she seeks equitable relief").

As the cases cited above have held, this Court does not have jurisdiction to seal judicial records of a conviction in a situation where the validity of the underlying conviction is not at issue. For this reason, the defendant's motion should be denied.

III.    The First Amendment Outweighs the Defendant's Reason
        for Sealing the Record of Conviction

Even if the Court did have jurisdiction to grant the defendant's motion, it should still be denied, as his difficulty in obtaining business is not sufficient to outweigh the public's right to access court documents. There is a public right of access to judicial documents in a criminal

case, both under the First Amendment, *see, e.g.*, *United States v. Thomas*, 905 F.3d 276, 282 (3d Cir. 2018) (plea documents); *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990) (transcripts of chambers and sidebar conferences); *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985) (indictments, informations, and bills of particulars), and under the common law, *see, e.g.*, *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) ("judicial proceedings and records"); *United States v. Smith*, 776 F.2d at 1110 ("The common law right of access is not limited to evidence, but rather encompasses all 'judicial records and documents' . . . . It includes 'transcripts, evidence, pleadings, and other materials submitted by litigants'") (citations omitted); *United States v. Criden*, 648 F.2d 814 (3d Cir. 1981) (videotapes submitted in evidence).

"A 'judicial record" is a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.' . . . Once a document becomes a judicial record, a presumption of access attaches." *In re Avandia Mktg.*, 924 F.3d at 672 (quoting *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001)). Sealing of a judicial records under either the First Amendment or common law requires a similar showing. Under the First Amendment, strict scrutiny applies. "A district court sealing a criminal record must make 'particularized findings . . . on the record in each case, (1) establishing the existence of a compelling governmental interest, and (2) demonstrating that absent limited restrictions upon the right of access, that other interest would be substantially impaired.'" *Thomas*, 905 F.3d at 282 (quoting *United States v. Antar*, 38 F.3d 1348, 1359 (3d Cir. 1994)).

Likewise, to overcome the common law right and presumption of access, a party moving to seal a judicial document must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking

7

closure." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted). To overcome that strong presumption, the Court must articulate the compelling interest to be protected and make specific findings on the record concerning the effects of disclosure. *In re Avandia Mktg.*, 924 F.3d at 672-73 (citing *In re Cendant Corp.*, 260 F.3d at 194).

It should be noted that even in cases where a balancing test has been employed, a defendant's difficulty in finding employment as a result of a conviction in most cases has been found to be insufficient to justify sealing or expunging a criminal record. For example, the Ninth Circuit, prior to its holding in *United States v. Sumner* that the courts did not have jurisdiction to expunge a record in a case where the validity of the conviction was not an issue, overturned the district court's decision granting expungement of the record of a defendant who wanted to re-enlist in the military. *United States v. Smith*, 940 F.2d 395 (9th Cir. 1991). The court held that the consequences of the defendant's conviction,

> including disbarment and a possible prohibition against reenlistment, are not unusual or unwarranted. Instead, they are the natural and intended collateral consequences of having been convicted. Were we to deem them sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy. Therefore, we must vacate the order of expunction.

*Id.* at 396.

Similarly, in *Wahi*, a health care fraud case, the defendant had sought to have the record in the records of his case expunged. The case had previously been dismissed upon the government's motion, due to the fact that the government had accidentally seen privileged information. The district court had employed a balancing test between the public and government interest in access to public records and the defendant's difficulty in obtaining employment in the medical field due to the public record of his case, and found in favor of the government. The Seventh Circuit did not disagree with the district court's conclusion on the balancing test, but

8

reversed and remanded based on its holding that the district court did not have jurisdiction. *Wahi*, 850 F.3d at 303.

There are numerous other cases that have found that a defendant's inability to obtain work in their field of choice is not sufficient to prevent public access to that record. *See, e.g.*, *Atori v. United States*, 2016 WL 525469, at *3, 4 & n.2 (E.D.N.Y. Feb. 8, 2016) (non-precedential) (while expressing sympathy for the defendant, denying defendant's motion to expunge despite its impact on the approval of her nursing assistant certificate, citing cases noting that even in extreme circumstances defendants' motions to expunge criminal convictions in the Second Circuit were not granted, and that the few cases that were granted involved juvenile convictions). Similarly, the Sixth Circuit found that a defendant's inability to obtain comparable employment after her conviction did not outweigh the "government's need to maintain extensive records to aid in law enforcement." *United States v. Robinson*, 1996 WL 107129, at *2 (6th Cir. Mar. 8, 1996) (non-precedential) (noting that courts that used a balancing test generally did so only with regard to "illegal convictions, convictions under statutes later deemed unconstitutional, and convictions obtained through governmental misconduct," but "uniformly denied expunction requests regarding valid convictions").

As the cases cited above indicate, even if the Court had jurisdiction in this case, the defendant should not prevail, as his desire to run the same company that he ran while committing the underlying crime would be unlikely to outweigh the First Amendment or law enforcement rights concerning public access to records of conviction.

IV. <u>Conclusion</u>

For the reasons stated above, the defendant's motion should be denied.

                                                 Respectfully submitted,

                                                 JACQUELINE C. ROMERO
                                                 United States Attorney

                                                 <u>*/s/ Judy G. Smith*</u>
                                                 Judy G. Smith
                                                 Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Plea Memorandum has been served via email upon Anthony Pope, Esq.

                                             */s/ Judy Smith*
                                             Judy Smith
                                             Assistant United States Attorney

Date: June 17, 2024